UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOSE VAZQUEZ, Individually and on behalf of all others similarly situated,** | : |
| | : |
| **Plaintiff,** | : |
| v. | : Case No. 1:20-cv-11343-FDS |
| | : |
| **SLSCO LTD., a Texas Limited Partnership**, | : |
| **Defendant.** | : |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT**

On July 15, 2021, Plaintiff filed a motion for preliminary review of the proposed class action settlement that was reached with Defendant, SLSCO LTD. ("SLS"). In that motion, Plaintiff sought approval of the settlement's terms as described in the parties' agreement, including the method and allocation of the settlement fund, and for approval of the notice that would be issued to the settlement class members. *See* Docket No. 27. Following a hearing on Plaintiff's motion, on January 11, 2022, the Court entered its Order granting preliminary certification and approving dissemination of notice of the settlement to the class. *See* Docket No. 33.

On February 3, 2022, Rust Consulting issued the Court-approved notice to class members using contact information provided by SLS. The notice, which was reviewed and approved by this Court, informs class members of the procedural history of the case, describes the formula used to calculate class member settlement shares, provides information on how to opt-out or

object to the settlement, states the date of this Court's hearing to consider final approval of the settlement, and provides contact information for Class Counsel should class members have any questions. A copy of the notice in the form in which it was issued to class members is attached as **EXHIBIT A.**

As of this date, no class members have opted out of the settlement. Likewise, no class member has indicated that they intend to appear at the scheduled hearing and/or object to the settlement. Under the terms of the settlement, all class members who do not opt out of the settlement will receive their payment approximately 50 days after the Court issues its final order approving the terms of the settlement. Moreover, since first issuing the notices, Rust Consulting has attempted to locate updated contact information for any class member whose notice was returned as undeliverable. Rust Consulting has reissued notices to those class members for whom it has located updated contact information. As of this date, 12 out of 67 notices were returned as undeliverable to Class Counsel. Of those 12, Rust Consulting has located updated contact information and reissued notices to all 12 class members. As of today, it appears that Rust Consulting had located and notified all of the class members.

At this time, Plaintiffs respectfully request that this Court approve the proposed class action settlement pursuant to Federal Rule of Civil Procedure 23(e). As set forth herein, the proposed settlement is a fair and reasonable compromise of the claims asserted in this litigation. It assures the members of the class a significant, definite recovery now as opposed to the risks and delays associated with continued litigation. The proposed settlement also provides for a reasonable incentive payment to the named-Plaintiff who prosecuted this action on behalf of his fellow workers and reasonably compensates Class Counsel for their expertise, time and risk in bringing this action. For these reasons, and as more fully set forth below, Plaintiff asks that the

Court GRANT this motion.

### I. NOTICE AND THE PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS

#### A. Notice of the Settlement.

On approximately February 3, 2022, Rust Consulting sent notice of the class settlement by first-class mail to the last known addresses of all individuals within the class definition. SLS provided these addresses to Class Counsel, based on its corporate records. When notices have come back as undeliverable, Rust Consulting has performed searches to obtain updated addresses using various means and has promptly resent the notices to these updated addresses. Additionally, Class Counsel has been contacted by members of the class who learned of the proposed settlement and provided updated address information. Notice was originally mailed to 67 individuals. Initially, 12 of the mailings were returned as undeliverable. After the searches and contact with class members described above, notice was resent to updated addresses for all 12 if the individuals for whom the notice was originally undeliverable (leaving no undeliverable notices).

The method of notice in this case (which was preliminarily approved by this Court) satisfies the standard established by the United States Supreme Court for disseminating notice to class members, namely it is "the best notice that is practicable under the circumstances." *Robinson v. Nat'l Student Clearinghouse*, 2020 WL 4873728, at *1 (D. Mass. July 8, 2020) (Saylor, J.), *aff'd*, 14 F.4th 56 (1st Cir. 2021) ("The Court hereby finds and concludes that Class Notice was disseminated to the Settlement Class in accordance with the terms set forth in Section III.E. of the Agreement and in compliance with this Court's Notice Order."); *Brown v. Colegio de Abogados de Puerto Rico*, 2011 WL 721910, at *1 (D.P.R. Feb. 28, 2011) (citing *Mullane v.*

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950)). As one court has noted, "'[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'" *Serio v. Wachovia Securities, LLC*, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting *In re Merrill Lynch TYCO Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008)); *see also In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("imposing a requirement of actual notice to every class member would place an impossible constraint on … class action litigation"). Here, Class Counsel believes that they have reached 100% of all class members, which is an extraordinary percentage.

Courts routinely recognize that notice by mail satisfies the requirements of Rule 23 regarding notice. *See, e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances"); *Parks v. Portnoff Law Assocs.*, 243 F. Supp. 2d 244, 249 (E.D. Pa. 2003) (notices mailed to class members' last known addresses held reasonable and adequate). Moreover, the low undeliverable rate here—less than 3% of the class—is significantly better than most cases that courts have found to be within the range of acceptability. *See*, *e.g.*, *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) (notice held reasonable and adequate even though 1,455 out of 6,423 claim forms were "not actually received"); *Grunin v. International House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975) (approving notice where 33% of class members not reached by mailing). Given Class Counsel's substantial efforts to ensure that notice of the class action settlement is actually received by as many class members as possible, the dissemination of

the notice here unquestionably satisfies Rule 23. *See Nilsen v. York Cnty.*, 382 F. Supp. 2d 206, 211 (D. Me. 2005).

### B. Proposed Plan for Distribution of the Settlement Funds.

The proposed settlement agreement provides for distribution of the settlement funds as follows: a) one-third of the settlement will be used to pay attorneys' fees and costs; b) $2,500 will be used to provide an incentive payment to the named-Plaintiff who assisted significantly in the prosecution of this case; and c) the remainder of the settlement fund will be distributed among class members according to a formula agreed upon by the Parties. The formula for class member distribution, which has been agreed upon by the Parties and explained to class members in the notice, awards class members an amount per week for each week worked during the class period. Under the formula, weeks are weighted such that class members will receive greater credit for their weeks worked in Massachusetts during the class period than those who worked solely in North Carolina. The minimum payment under the formula is $25. This formula reflects the fact that those class members who worked in Massachusetts are entitled to greater damages under Massachusetts wage and hour law.

If the Court approves the proposed settlement, it shall become effective thirty-five days after the Court enters such an order and the time for any challenge to the settlement, including on appeal, has lapsed. Within ten days of that date, SLS will fund all obligations under the settlement. Settlement checks issued to class members shall be valid for 60 days. After that time, any un-cashed checks will be paid to a *cy pres* beneficiary designated by SLS and approved by the Court.[1]  Checks to class members will be reported by SLS as W2 income.

---

[1] The *Cy Pres* is the Boston Chapter of the National Alliance on Mental Illness ("NAMI").  *See* Settlement Agreement ¶10(c).

The proposed distribution also allocates $183,333.33, for attorneys' fees, and costs. As discussed below, in Section III, this amount is fair and reasonable given the nature and scope of this litigation and the issues involved and the exceptional results achieved for the Class. In addition, the proposed settlement provides an incentive payment to the named-Plaintiff Jose Vazquez in the amount of $2,500.00. This amount is appropriate in light of the efforts, assistance and risk Vazquez took bringing these claims on behalf of a class of his fellow workers, as discussed in Section III, below.

## II.  PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A class action may not be compromised without court approval, and the court must decide whether the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); *see also In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 195 (D. Mass. 2005). This Court has considered six factors in determining the reasonableness of a proposed class action settlement: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206-07 (D. Me. 2003) *judgment entered,* MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003) (Hornby, J.). In this Circuit, "settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair." *Id. citing City P'ship Co. v. Atlantic Acquisition Ltd. P'ship.*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also In re M3 Power Razor System Marketing & Sales Practice Litig.*, 270 F.R.D. 45, 62-63 (D. Mass. 2010) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). Here, applying these factors and the standard applied

by the First Circuit, the settlement proposed in this case is reasonable and final approval is appropriate.

### A. Value of the Settlement

The total class settlement is reasonable when evaluated against the potential total recovery, after a successful trial, discounted for risk, delay and expense. *See Compact Disc*, 216 F.R.D. at 207. Here, Plaintiff alleges that he and the class were required to work off-the-clock and a result were not fully compensated for their overtime hours worked. The Settlement Agreement provides that, if approved, Defendant will pay a maximum of five hundred and fifty thousand dollars ($550,000.00) to the class to resolve the claims. This amount is greater than the total amount of actual wage damages for all the potential class members determined by the Parties using Defendant's payroll records, and equates with roughly three (3) times the amount due to each Massachusetts class member if they were credited with having worked approximately eleven (11) hours per workday, and two (2) times the amount due to each North Carolina class member if they were credited with having worked eleven (11) hours per day. Indeed, even after payment of attorneys' fees and costs, every class member will receive significantly more than 100% of his alleged wage loss. Further, the proposed settlement provides that Defendant will pay the first fifteen thousand dollars ($15,000.00) in costs to the settlement administrator in addition to the maximum settlement amount.

### B. Class Reaction

The response to the settlement has been positive. Class members have expressed their gratitude at being part of the case. No class member has objected to the settlement, and no one has opted out of the class, further evidence of the class' overall satisfaction with the proposed settlement. *See Compact Disc*, 216 F.R.D. at 211.

**C. Stage of Litigation**

The proposed settlement comes almost a year into this litigation, which has yielded "enough time for serious discovery and evaluation." *Compact Disc*, 216 F.R.D. at 211. The parties have exchanged hundreds of documents, and conducted numerous interviews of the class members who worked for SLS on the subject jobs during the relevant period. Moreover, in light of the results achieved, there can be little question that the parties' have gone deep enough into the merits of their cases to be able to fairly evaluate the settlement value of the case. *See In re Tyco*, 535 F. Supp. 2d at 261 (noting that parties, after extensive discovery, "have most of the crucial facts in their possession, making them well-positioned to understand the merits of their case.").

**D. Quality of Counsel and Representation**

Class Counsel is a well-qualified and experienced class action litigator, particularly in the field of wage and hour litigation, making him more than competent to represent the interests of the class. Importantly, the undersigned and the law firm of Morgan & Morgan has repeatedly successfully represented classes of workers in a vast variety of both federal (collective) and state wage and hour class actions. *See, e.g., Fairley v. Knights Marine and Industrial Services, Inc.,* Case 1:15-cv-00047-LG-RHW, D.E. 43 (S.D. Miss. May 29, 2015) (nationwide class of tradesmen alleging miscalculation of their overtime); *Case v. Danos & Curole Marine Contractors, L.L.C.*, 2015 WL 1978653 (E.D. La. May 4, 2015); *Kutzback v. LMS Intellibound, LLC*, 2015 WL 1393414 (W.D. Tenn. Mar. 25, 2015) (nationwide class of unloaders asserting off-the-clock claims); *Miller v. Garibaldi's Inc.,* 2015 WL 1170956 (S.D. Ga. Mar. 13, 2015); *Bath v. Red Vision Systems, Inc.*, 2014 WL 2436100 (D.N.J. May 29, 2014); *Thompson v. Direct General Consumer Products, Inc.*, 2014 WL 884494 (M.D. Tenn. March 5, 2014) (nationwide

class of insurance agents); *Palma v. MetroPCS Wireless, Inc*., 2013 WL 6597079 (M.D. Fla. Dec. 16, 2013)(nationwide class of account service representatives); *White v. NTC Transp., Inc*., 2013 WL 5874566 (N.D. Miss. Oct. 31, 2013); *Cooper v. East Coast Assemblers, Inc*., 2013 WL 308880 (S.D. Fla. Jan. 25, 2013)(certifying nationwide class of "assemblers" regarding unpaid overtime claims); *Young v. Dollar Tree Stores, Inc.,* 1:11-cv-01840-REB-MJW, D.E. 264 (D. Colo. Aug. 24, 2012)(conditionally certifying a nationwide class of over 35,000 "assistant store managers" pursuing off-the-clock claims); *Hardesty v. Litton's Market and Restaurant, Inc*., 2012 WL 6046743 (E.D. Tenn. Sept. 28, 2012) (class of tipped servers alleging tip credit violations); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, (E.D.N.Y. April 20, 2012); *Elliott v. Amspec Services, LLC*, 2011 WL 6002019 (D.N.J. Nov. 29, 2011)(certifying nationwide class of "oil, gas and chemical inspectors"); *Mainor v. Lazer Spot, Inc.,* 2011 U.S. Dist. LEXIS 151990, at *8 (N.D. Ga. Aug. 9, 2011) (nationwide class of yard jockeys); *Dacar v. Saybolt, LP*, 4:11-cv-00433, D.E. 135 (S.D. Tex. June 2, 2011); *Aponte v. Comprehensive Health Management, Inc*., 2011 WL 2207586 (S.D.N.Y. June 2, 2011); *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457 (D.N.J. Apr. 7, 2011); *Mills v. RM International, Inc*., 3:11-cv-00129, D.E. 38 (D. Or. March 31, 2011) (conditionally certifying nationwide class of "test drivers"); *Reyes v. AT & T Corp*., 2011 WL 3517004 (S.D. Fla. Feb. 28, 2011) (conditionally certifying a nationwide class of "retail account executives"); *Brantley v. Inspectorate America Corp.,* 4:09-cv-02439, D.E. 43 (S.D. Tex. April 14, 2010); *Gayle v. United States,* 85 Fed. Cl. 72 (2008).

While class members may have little basis from which to judge independently the fairness of a proposed settlement, Class Counsel takes very seriously his obligation and duty to these unnamed class members and will agree to a settlement only when they are convinced that it is in the best interest of the class. Moreover, following this case, SLS has since changed the pay

practice at issue and Class Counsel has received assurances that SLS is paying proper overtime on an ongoing basis.

In this case as well, the named-Plaintiff has been committed to obtaining a fair resolution of the case for all of his fellow class members as well as himself, and have supported Class Counsel's commitment to negotiating on behalf of the interest of the entire class. Named-Plaintiff has made himself available for hours cumulatively to assist Class Counsel in understanding the merits of the case and the possible merits of SLS' claimed defenses. Moreover, the documentary records retained by Plaintiff was helpful to Class Counsel, as they provided evidence concerning average weekly earnings, and hours worked. Jose Vazquez, has been particularly vigilant in his role as a class representative. The Plaintiff class could not ask for better representation than that of the named-Plaintiff.

### E. Conduct of Negotiations

The Parties agreed to attempt to settle the class claims, prior to the formal discovery and significant documentary evidence informally for that purpose. The documents exchanged included those identifying the class members, their weeks worked, and the rates paid, among other things. After extensive negotiations and the exchange of further information, the parties ultimately reached a settlement of the Massachusetts and North Carolina class claims, and of the Plaintiff and individual opt-ins FLSA claims as well. The parties notified the Court of their settlement via Notice of Settlement filed on May 7, 2021. *See* ECF No. 24. Thereafter, the parties continued negotiating the non-monetary terms of the settlement and executed the final settlement agreement on June 3, 2021. *See* ECF No. 26.

### F. Case Prospects, Including Risk, Complexity, Expense and Duration

In addition to the legal issues remaining to be litigated in this case, discussed above, the

Court must also consider the length of continued litigation and the possibility of appeal, and the delay of possible recovery by the class to which these factors contribute as markers of the proposed settlement's value and reasonableness. *Compact Disc*, 216 F.R.D. at 212; *In re Tyco*, 535 F. Supp. 2d at 260 (noting additional risk, uncertainty and delay faced by plaintiff class if case proceeded to trial). If the settlement is not approved, the parties will need to complete full formal discovery including at least 4 or 5 depositions per side likely. Nearly any outcome is likely to result in further litigation. Such would likely portend at least another year of continued litigation. Even if Plaintiff successfully establish liability and damages, SLS could then appeal the decision. These realities in particular illustrate the value of the settlement, which puts significant awards in the workers' wallets today, without years of future litigation, appeals and the risk of no recovery.

For these reasons, and the reasons set forth in Plaintiffs' Motion for Preliminary Review (Docket No. 27), Plaintiff respectfully request that the Court approve the proposed settlement and plan of distribution.

### III. THE REQUESTED INCENTIVE PAYMENT IS APPROPRIATE

The settlement also proposes a $2,500 incentive payment to the named-Plaintiff. This proposed incentive payment is fair and reasonable, given that it was this Plaintiff who initiated the lawsuit on behalf of his co-workers and because it was through his initiative that this recovery was obtained. The named-Plaintiff provided invaluable assistance to class counsel, including providing documents, and contacting class members to gather evidence relating to the case, and assisting Class Counsel during settlement discussions. This participation represents time and effort that was not contributed by all other members of the class and, as such, merits an incentive award. *See Robinson,* 2020 WL 4873728, at *3 (approving service award in the amont

of $7,500.00); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011) *supplemented*, 800 F. Supp. 2d 328 (D. Me. 2011) and *aff'd*, 2:03-MD-1532-DBH, 2012 WL 379947 (D. Me. Feb. 3, 2012).

"Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *Compact Disc*, 292 F. Supp. 2d at 189. Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation"), *quoting In re Lupron*, 228 F.R.D. 75, 98 (D. Mass. 2005); Savett, *et al.*, "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiffs," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne the flag and headed a class action. Most courts are receptive to this because they feel that private attorneys general should be encouraged, and such incentives further the goals of federal and state laws"); *see also*, *e.g.*, *Sheppard v. Consol. Edison Co. of New York, Inc.*, 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments).

It is not uncommon for courts to approve incentive payments in the range of that requested in this case, and in far higher amounts. *See, e.g., Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative plaintiffs); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990)

(citing cases in support of incentive payments and awarding payments ranging from $35,000 to $50,000 for named plaintiffs); *Yap v. Sumintomo Corp. of Am.*, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs).

Indeed, incentive payments serve a particularly important role in employment class actions, where the lead plaintiffs are risking their livelihood (including their professional reputation) to bring the case forward on behalf of their fellow co-workers. Courts have recognized the important role of class actions in the employment context precisely because of this very real element of potential retaliation. *See, e.g., Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); *Guzman v. VLM, Inc.*, 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes incentive awards even more crucial in employment class action settlements as well. As one court has observed: "[Incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). As such, Plaintiff respectfully requests that the proposed

incentive award be approved.

### III.     THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

The proposed distribution of the settlement proceeds provides for $183,333.33 for attorneys' fees and expenses. That amount is in line with the usual and customary practice of setting contingency fees at one-third of any recovery.[7] In the First Circuit, a district court's "latitude is extremely broad" with respect to determining an appropriate award of attorneys' fees under the percentage of common fund method, which is the method proposed here. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 309 (1st Cir. 1995). Courts generally favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.... Jurisdiction over the fund involved in the litigation allows a Court to prevent … inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted).

In the First Circuit, assessing attorneys' fees in class action settlements as a percentage of the common fund is the prevailing and favored approach over the loadstar method. *See Compact Disc*, 216 F.R.D. at 215 *citing In re Thirteen Appeals*, 56 F.3d at 307 (awarding attorneys' fees of $68 million out of a $220 million settlement fund). As one court in this Circuit has noted:

> By assessing attorneys' fees and litigation expenses against a common fund, the court spreads these costs proportionately among those benefitted by the suit. Moreover, providing adequate compensation encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one rather than settling lower and earlier than would be in the best interests of the class members they represent.

*In re Tyco*, 535 F. Supp. 2d at 265. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d at 307.[8] The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a loadstar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *Id.*[9] When using the percentage method, courts routinely approve fee awards that represent one-third of the settlement fund.

In *Nilsen v. York County*, 400 F. Supp. 2d 266, 278 (D. Me. 2005) (Hornby, J), another court within this Circuit adopted the standard set forth by the Seventh Circuit in *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) for evaluating the reasonableness of an award of attorneys' fees as part of a class action settlement. Under this method, described as the "market mimicking" approach, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* quoting *In re Synthroid Mkt. Litig.*, 264 F.3d at 718. In *Nilsen*, this Court applied the following factors in assessing the appropriate award of fees to class counsel: (1) the use of standard contingency fee agreements and (2) awards in other, similar cases. *Id.* at 279-82. Applying the *Nilsen* reasoning to the proposed settlement here supports a conclusion that the requested one-third attorneys' fee award is reasonable.

### A. The Contingency Fee Agreements

At the initiation of undersigned's representation of the named-Plaintiff, the named-Plaintiff and undersigned counsel signed a contingency fee agreement which provided for a contingency fee of forty (40%) percent. All of the additional plaintiffs who have opted in, likewise signed a contingency fee agreement with a forty (40%) percent contingency.

Notwithstanding the retainer agreements, under the terms of the settlement, undersigned counsel has agreed to cut his contingency fee to one-third (33.3%). Frisch Decl., attached as **EXHIBIT B**, ¶20.

At the time these retainers were signed, Plaintiff's counsel was taking a substantial risk by agreeing to pursue a class action with no assurance that it would recover any fees, a factor that supports the requested award. *See Nilsen*, 400 F. Supp. 2d at 278 (noting that the "market mimicking" approach is intended to account for the risk class counsel assumes of receiving no payment at all for the work performed). Moreover, as a multitude of courts have recognized, an award of one-third of the total recovery is standard in contingency fee cases. *See, e.g., Nilsen*, 400 F. Supp.2d at 279; *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005). These facts support the requested award as consistent with an award that the market might produce, particularly given the number of class members who signed agreements providing for a one-third recovery by Class Counsel. *See id.*

### B. Awards in Other Cases.

Attorneys' fee awards in similar class actions also support the requested award, because it is common for Courts to approve an award of attorneys' fees equal to one-third of the common fund in wage and hour class action settlements. *See Matamoros v. Starbucks*, C.A. No. 08-10772 (D. Mass. filed May 7, 2008), Docket Nos. 159, 169 (settlement of claims under state wage law); *Crenshaw v. Texas Roadhouse, Inc., et al.*, C.A. No. 11-10549-JLT (D. Mass. filed April 5, 2011), Docket Nos. 53, 56 (same); *Cutter v. HealthMarkets, Inc., et al.*, C.A. No. 10-11488-JLT (D. Mass. filed July 2, 2010) (settlement of claims for unlawful misclassification under state law and denial of wages), Docket Nos. 77, 80; *Kiely v. TripAdvisor LLC*, C.A. No. 08-11284-MLW (D. Mass. filed July 2, 2008) (settlement of claims for unlawful misclassification under state law

and denial of wages), Docket Nos. 51 and 52.[2] These awards in similar cases also support the conclusion that the requested award of one-third is reasonable under the "market mimicking" approach espoused by another court in this Circuit. *See Nilsen*, 400 F. Supp. 2d at 281.

**C. Other Considerations That Support the Requested Award.**

Here, Class Counsel has litigated this case for almost a year, and has achieved a significant result for the plaintiff class. This case is an employment class action, which differs in a number of important respects from consumer and antitrust class actions, with which the Court may be more familiar. First, the settlement is for a discrete group of class members, 67 people, whose names and last known addresses have been provided by Defendant. As a result, the final claims rate is expected to be much higher than in other cases, such as a typical consumer class action where the class members are harder to reach. Second, as an employment class action settlement, the amounts recovered by each class member are substantial. Third, as explained above, this proposed settlement contemplates that *all* of the settlement proceeds will be distributed to class members or their counsel, with no residual amounts being returned to Defendant.

Moreover, even though the lodestar method is not preferred, a lodestar analysis in this case further demonstrates that the proposed award for fees and costs is fair and reasonable. *See Compact Disc*, 216 F.R.D. at 215-16 ("loadstar approach … can be a check or validation of the appropriateness of the percentage of funds fee, but is not required."); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (noting that lodestar method can be used to

---

[2] *See also O'Connor v. Dairy,* 2018 WL 3041388, at *4 (D. Me. June 19, 2018) ("A one-third contingent fee is common in class action wage-and-hour cases.") (citing cases); *Curtis v. Scholarship Storage Inc.,* 2016 WL 3072247, at *4 (D. Me. May 31, 2016); *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 79 (D. Mass. 2005) (approving fee of one-third of the common fund); *Scovil v. FedEx Ground Package Sys., Inc.,* 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (same).

"doublecheck" the reasonableness of a fee). Including the hours that are expected to be spent on following approval of the settlement, Class Counsel expects that they will have spent more than 200 hours on this case. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) (lodestar multiplier "need not fall within any pre-defined range"; court need not engage in this analysis with "mathematical precision" or "bean-counting" and may rely on summaries of hours submitted by the attorneys (as opposed to actual billing records)). Billed at a rate of $500.00 per hour class counsel's lodestar therefore exceeds $100,000.00. Frisch Decl., ¶23. Moreover, Plaintiff's counsel has already expended $589.50 in costs in connection with the litigation. *Id.*, ¶21.

Thus, the lodestar multiplier here is less than 2, which is far lower than those approved by courts in many other cases. *See, e.g.*, *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (approving lodestar multiplier of 8.9, even where plaintiffs' counsel were "piggybacking" on prior success by another plaintiffs' firm in a different case).[3] This case is in stark contrast, in that Plaintiffs' counsel's own work on other cases paved the way for this settlement. Accordingly, the fact that the one-third fee award would constitute a lodestar multiplier of less than 2 further supports approving the fee award.

For these reasons, and given this precedent approving one-third recovery for attorneys' fees in class action cases just like this one, the Court should award the requested one-third recovery here.

**VI. CONCLUSION**

For all the aforementioned reasons, Plaintiff respectfully requests that this Court grant

---

[3] Under both Supreme Court and First Circuit precedent, a district court evaluating an award of attorneys' fees as part of a class action settlement is permitted to award a reasonable percentage of the common fund "even if the fee effectively represents a multiplier of the lodestar amount." *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 272-73 (D. Me. 2005) (Hornby, J.).

final approval of the Settlement and the proposed Plan of Distribution as fair, reasonable, and adequate. Plaintiff further requests that the Court approve the requested attorneys' fees award, the reimbursement of costs/expenses incurred, and the proposed incentive award to the named-Plaintiff.

Respectfully submitted this 6th day of April, 2022

PLAINTIFFS,

By and through their attorneys,

/s/ Andrew R. Frisch
Andrew R. Frisch
(admitted *pro hac vice*)
FL Bar No. 27777
*afrisch@forthepeople.com*
MORGAN & MORGAN, P.A.
8151 Peters Road
Suite 4000
Plantation, FL 33324
Telephone: 954-WORKERS

-and-

*/s/ Kelsey Raycroft Rose*
Kelsey Raycroft Rose
MA Bar No.:692102
MORGAN & MORGAN, P.A.
12 Ericsson St, Suite 2F
Boston, MA 02122
Tel: 857-383-4903
Fax: 857-383-4928
E-mail: kraycroftrose@forthepeople.com

*Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 6, 2022, this document was filed with the Clerk of Court through the Court's electronic filing (ECF) system and that ECF will send electronic notice of the filing to all counsel of record.

/s/ Andrew R. Frisch
Andrew R. Frisch